## LYNDE v. LYNDE.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. DIVORCE—SERVICE—APPEARANCE—ALIMONY—AMENDMENT TO DECREE.

     After a default decree of divorce in New Jersey, on service by publication, petitioner asked to amend it to allow her to apply at the foot thereof for alimony, on the ground that the failure of the decree to provide therefor was due to failure of her solicitor to carry out her instructions. A solicitor appeared for defendant, claimed the failure to ask for alimony was the deliberate act of petitioner and her counsel, with intent to give up alimony to facilitate obtaining the decree, cross-examined and examined witnesses, represented defendant in argument, and, being defeated, signed defendant's notice and petition of appeal. Several stipulations in the record were signed by him as defendant's solicitor, and in no way was any intent manifested to restrict his appearance to a denial merely of the chancellor's jurisdiction to amend the decree. *Held,* that the appearance was general, and conferred jurisdiction over defendant, that an amendment of the original decree as prayed for was binding on him, and that a subsequent award of alimony was valid.

2. SAME—WITHDRAWAL OF COUNSEL.

     Proceedings to fix the amount of alimony after a decree has been amended to allow application for alimony are merely ancillary to the amended decree, and the court does not lose jurisdiction by reason of defendant's counsel withdrawing from the case, notice of each step being served on defendant outside of the state.

3. SAME—AMENDING DECREE.

     The chancellor, in New Jersey, has power to amend a decree of divorce so as to authorize application for alimony, where the omission to reserve the question, as to alimony in the decree, was due to inadvertence, and not to a deliberate intention not to ask for it.

4. SAME—EXECUTION.

     The courts of one state have no authority to enforce a judgment obtained in an action on an amended decree granting alimony, rendered in another

state, except by execution, as a simple money judgment, and cannot enforce the payment of future alimony, as provided in such decree, nor afford the remedies of security, injunction, and sequestration, as if the decree had been made in such state.

5. SAME—CONCLUSIVENSSS OF JUDGMENT.

It is no defense to the enforcement of a judgment recovered on a foreign decree for alimony that, at the time the decree was rendered, the law of the state in which the judgment was rendered did not award alimony to a woman divorced from a husband without means, or did not allow a mistake in a judgment to be corrected after two years, as the validity of the decree must be determined by the law of the foreign state.

Appeal from special term, Suffolk county.

Action by Mary W. Lynde against Charles W. Lynde. There was a judgment for plaintiff, and defendant appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George S. Ingraham (John H. Kemble, on the brief), for appellant.

James Westervelt (Henry B. Gayley and Matthew C. Fleming, on the brief), for respondent.

WILLARD BARTLETT, J. The purpose of this action is to enforce a claim for alimony for which the plaintiff has obtained a judgment against the defendant in the court of chancery of New Jersey. The alimony was not granted by the original decree of divorce, which was based on the ground of desertion, and was procured after service of process by publication upon the husband, who was not served personally within the state, and did not then appear. The wife, however, subsequently made an application to the chancellor to amend the decree by adding thereto a provision authorizing her to apply at the foot thereof, at any time thereafter, for reasonable alimony, and such other relief touching alimony as might be equitable and just. The husband appeared generally by his solicitor, in opposition to this application, which was granted by the chancellor. Lynde v. Lynde, 54 N. J. Eq. 473, 35 Atl. 641. The defendant thereupon appealed from the order amending the decree, and it was unanimously affirmed by the court of errors and appeals of New Jersey, for the reasons given by the chancellor below. 55 N. J. Eq. 591, 39 Atl. 1114. The vice chancellor, upon due notice to the defendant's solicitor, then made an order of reference to a special master in chancery to ascertain whether alimony should be allowed to the plaintiff, and, if so, how much. Notice of hearing before the master was given to the defendant's solicitor, who did not attend the reference, however, and who shortly afterwards informed the chancellor that he was no longer solicitor for the defendant. This gentleman did not appear in the subsequent proceeding in the cause, although notified of the same. Upon the master's report, the chancellor, on December 28, 1897, made a final decree supplementary to the amended decree of divorce, awarding the wife $7,840 back alimony, and further alimony at the rate of $80 a week, authorizing the issue of execution therefor, declaring the sums awarded as alimony to be liens upon the defendant's real estate, requiring him to give security for the payment of such sums, and providing for sequestration and a receivership in case

of the defendant's failure to make the prescribed payments or furnish the prescribed security. The present suit is based upon this decree for alimony, and has resulted in a judgment at the special term that the same be enforced "with like force and effect as if the same were a judgment of this court."

The defendant's appeal raises two important questions: (1) Had the court of chancery in New Jersey jurisdiction to render the judgment for alimony against the defendant? (2) If so, has the supreme court of this state any authority to enforce the New York judgment based upon the New Jersey decree for alimony, except by execution as a simple money judgment?

1. Had the court of chancery in New Jersey jurisdiction to render the judgment for alimony against the defendant? The decree of divorce, as it originally stood, having been granted against the nonresident defendant without personal service upon him in New Jersey, or an appearance by him therein, would not be recognized in this state as a valid judgment. People v. Baker, 76 N. Y. 78; O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110. When the plaintiff sought to amend that decree, however, by adding a provision which would enable her to recover alimony, she obtained an order from the chancellor requiring the defendant to show cause why her petition to that end should not be granted. This order to show cause provided for the service of a certified copy thereof and of the petition upon the defendant, either within or without the state. It does not appear where the papers were actually served, but a memorandum by the chancellor in the record shows that, when this application to amend the decree subsequently came before him, Mr. J. Herbert Potts and Mr. C. H. Voorhis appeared for the defendant in opposition to the desired amendment. In this memorandum Chancellor McGill says:

"It is asserted, on behalf of the petitioner, that the decree in this case failed to include any provision for alimony because of the neglect of the petitioner's solicitor, who did not carry out the petitioner's instructions in that behalf; *and upon the other side it is alleged that the failure to ask for alimony when the decree was taken was the deliberate act of both the petitioner and her counsel, with intent to give up alimony in order to facilitate them in obtaining a decree of divorce.*"

The language which I have italicized certainly indicates that the defendant appeared in the proceeding by counsel to oppose the application on the merits. In order to ascertain the exact state of facts, the chancellor directed the taking of affidavits, adding: "Both the petitioner and her former counsel should be examined and cross-examined." Pursuant to this memorandum, testimony was taken stenographically before a master, whose record shows that "J. Herbert Potts, Esq., solicitor of defendant," was present at the hearing, and that he cross-examined the petitioner and another witness who testified in her behalf. Subsequently Mr. Potts served upon Mr. James Westervelt, the petitioner's solicitor, notices that testimony would be taken in behalf of the defendant before masters in chancery at Trenton and Jersey City, and the minutes of the master in each instance show that Mr. Potts attended the hearing as counsel for the defendant, and examined the witnesses. On the argument of the

case before the chancellor, he represented the defendant, and the defendant's notice and petition of appeal to the court of errors and appeals bear the signatures of Mr. Potts as solicitor and Mr. Charles. C. Black as counsel. There are also several stipulations in the New Jersey record, signed by Mr. Potts as defendant's solicitor in the proceeding. Neither in any paper served by Mr. Potts, nor in any· of the orders made by the courts in New Jersey, is there anything to indicate that he intended to restrict his appearance to the single purpose of denying the jurisdiction of the chancellor to amend the original decree of divorce. On the contrary, the testimony which he introduced in the proceeding could only have been designed to secure a denial of the application on the merits; for it was intended to show the falsity of the plaintiff's claim that all provision for alimony was omitted from the decree by reason of the neglect of her solicitor to carry out her instructions. Upon the trial of the present case, Mr. Potts testifies that he did question the jurisdiction of the court of chancery in the amendment proceeding on the ground that the defendant had never been served with process and on other grounds, and the grounds specified in his petition of appeal to ·the court of errors and appeals also relate to the jurisdiction of the chancellor. In no manner, however, did he limit his appearance or action in behalf of the defendant to the assertion of the proposition that the court had never obtained any such jurisdiction over the person of the defendant as to empower it to amend the decree. He went further, and litigated the application on its merits, and I think the learned judge at special term was justified in holding that he appeared generally in the cause.

But the appellant confronts us with the proposition that an appearance in· opposition to a motion to amend a decree of divorce could not galvanize into life a judgment which previously was void, and he cites Kamp v. Kamp, 59 N. Y. 212. That case, however, differed radically from the case at bar. There was no attempt there to amend the judgment. The effort was to obtain an order for alimony long subsequent to the decree of divorce, notwithstanding that the decree as it stood had presumably decided any claim for alimony adversely to the plaintiff, and gave no leave to the plaintiff to renew her claim in the future. The court of appeals decided that alimony could not be granted under those circumstances, but there is nothing in the opinions denying the power of a court, upon notice to the party to be affected, to amend a judgment in order to correct a mistake which was made in rendering it. Such was the power exercised by the chancellor of New Jersey in Lynde v. Lynde, 54 N. J. Eq. 473, 35 Atl. 641. A mistake was made in omitting from the decree a reservation of the question of alimony for future determination. "I am satisfied," says the chancellor, "that the omission of the decree to reserve the question as to alimony was not a deliberate act of the petitioner's counsel based upon the exercise of his judgment, but was due to the inadvertence of that gentleman in drafting the decree;" and he declares the rule in New Jersey to be that the court will, upon petition, amend its enrolled decree, when the amendment is necessary to give full expression to its judgment, and is matter which

would without doubt have been incorporated in the decree when made, if attention had been called to it. The highest court in New Jersey has held that this amendment was lawfully and properly made. To that adjudication the defendant, through his counsel, was a party. I cannot see why it is not binding upon him. The practice of reserving the question of alimony to a proceeding at the foot of the judgment has been sanctioned in this state. Galusha v. Galusha, 138 N. Y. 272, 33 N. E. 1062. "The demand for alimony in a divorce suit," said Maynard, J., in the case cited, "is not an essential part of the cause of action. * * * It need not be determined when the judgment dissolving the marriage is entered, providing the right to have it subsequently determined is reserved in the judgment." The amendment to the New Jersey decree reserved that right, and the adjudication resulting in that amendment, having been made in a proceeding in which there was a general appearance by the defendant, was a judicial determination, which is binding upon him, to the effect that the original decree had sufficient validity to support an award of alimony, if the court should thereafter see fit to make one. The subsequent proceedings to fix the amount were merely ancillary to the amended decree. The first of these was an application to the vice chancellor for an order of reference to a master, and was made upon due notice to Mr. Potts, as solicitor for the defendant. Several weeks later, upon a motion by the plaintiff for a commission, of which Mr. Potts, as the defendant's solicitor, had also been duly notified, that gentleman stated to the chancellor that he was no longer the solicitor for the defendant. The court of chancery did not lose jurisdiction by reason of counsel's withdrawal at this stage, but might lawfully proceed, as it evidently did thereafter, upon proof of service of notice of each step in the litigation upon Mr. Lynde without the state.

2. Having reached the conclusion that the court of chancery in New Jersey had jurisdiction to render the judgment for alimony against the defendant, we now come to the second branch of the case: Has the supreme court of this state any authority to enforce its own judgment, based upon the amended New Jersey decree, except by execution, as a simple money judgment? The special term has done very much more than this. Not only has it adjudged that the defendant pay to the plaintiff alimony, counsel fee, and costs in excess of $14,000, and $80 per week alimony in the future, but it has required the defendant to give $100,000 security for the payment of such alimony, has enjoined him from disposing of any of his property except the income thereof until he makes the prescribed payments or gives such security, and has named a receiver to whom he must transfer his real and personal estate, if he fails to pay the alimony or secure the payment thereof. The extent to which the courts of this state will go in enforcing a judgment based upon a foreign decree for alimony is more fully and satisfactorily considered and discussed in Wood v. Wood, 7 Misc. Rep. 579, 28 N. Y. Supp. 154, than in any other case which I have been able to find. It is a special-term decision in the New York court of common pleas, overruling a demurrer to a complaint. A determination of the point which arises

here was not essential to the adjudication there; but the opinion of Judge Pryor upon the question whether the plaintiff could have the remedies of security and sequestration, in aid of the claim for alimony, established by her foreign judgment, is entitled to the respect commanded by its cogent reasoning and the authorities which he cites for his conclusion. That conclusion is that in such a case the plaintiff is entitled to no other relief than the recovery of past-due alimony, to be collected by execution. Concurring in that view, as I do, I shall not repeat or paraphrase the able argument by which Judge Pryor supports it, but shall merely call attention to some additional considerations tending to show that it is correct.

The proposition that the courts of this state have no jurisdiction over the subject of divorce, except such as they derive from statute, has quite recently been reasserted by the court of appeals. Walker v. Walker, 155 N. Y. 77, 49 N. E. 663. A successful suit in New York, however, upon a New Jersey decree of divorce and alimony, does not make the New Jersey decree, as such, a judgment of the courts of this state. That decree is merely evidence, upon which the plaintiff obtains here, not a judgment of divorce and alimony, but a judgment authorizing the collection of a certain sum. Hence our courts may not afford the remedies which the Code of Civil Procedure authorizes here upon a judgment for alimony, but may only enforce the judgment as one for money. There are numerous judicial opinions which declare, in substance, that a judgment sued upon in a sister state is entitled to the same effect there as it had in the state in which it was obtained. Probably no case has been more frequently cited in support of this rule than Barber v. Barber, 21 How. 582, 595. It was there said by Mr. Justice Wayne that, when a court having jurisdiction of a suit for divorce makes an allowance to the wife by way of alimony, "it becomes a judicial debt of record against the husband, which may be enforced by execution or attachment against his person, issuing from the court which gave the decree; and when that cannot be done on account of the husband having left or fled from that jurisdiction to another, where the process of that court cannot reach him, the wife, by her next friend, may sue him wherever he may be found, or where he shall have acquired a new domicile, for the purpose of recovering the alimony due to her, or to carry the decree into a judgment there, with the same effect that it has in the state in which the decree was given." Judge Pryor, in Wood v. Wood, supra, declined to follow this dictum in the prevailing opinion in the Barber Case, deeming the better argument to be that of the dissenting members of the court. But a careful examination of the facts, as stated by Mr. Justice Wayne himself (foot of page 587), shows that the case really involved no question as to the enforcement of the judgment by remedies exclusively appertaining to divorce jurisdiction. The decree granted upon the foreign judgment simply adjudged that a specific amount was due to the wife, that the husband should pay it, and, in default of such payment, execution should issue therefor. Though granted on the equity side of the court, it was to all intents and purposes simply a money judgment at law. It is probable, therefore, that the language of Mr. Justice Wayne in

Barber v. Barber, supra, as to carrying a decree into a judgment with the same effect as it had in the state in which the decree was given, was not intended as an assertion that the plaintiff in the judgment could carry with it into another state the right to any particular remedies for its enforcement. Such a proposition would have been in conflict with the rule which he laid down many years earlier in McElmoyle v. Cohen, 13 Pet. 312, 324, 325, where he said:

"The authenticity of a judgment and its effect depend upon the law made in pursuance of the constitution. The faith and credit due to it as the judicial proceeding of a state is given by the constitution, independently of all legislation. By the law of the 26th of May, 1790, the judgment is made a debt of record, not examinable upon its merits; but it does not carry with it, into another state, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there, and can only be executed in the latter as its laws may permit. It must be conceded that the judgment of a state court cannot be enforced out of the state by an execution issued within it. The concession admits the conclusion that, under the first section of the fourth article of the constitution, judgments out of the state in which they are rendered are only evidence in a sister state that the subject-matter of the suit has become a debt of record, which cannot be avoided but by the plea of nul tiel record."

This statement of the law has been approved by the supreme court of the United States as lately as 1887, in the case of Wisconsin v. Insurance Co., 127 U. S. 265, 8 Sup. Ct. 1370. The true rule seems to be that while a valid judgment in one state is effective in any other state in which it is proven, as a determination of the legal status and rights of the parties to the litigation in respect to the matters litigated, it does not take with it into that other state the right to any remedies, save such as are there established for the enforcement of judgments based upon judgments obtained elsewhere. As Mr. Freeman well says:

"In some respects it is obvious that the judgment of a court of another state cannot have the same effect as a domestic judgment. Writs of execution cannot issue thereon, because the domestic courts have no authority to issue such writs in aid of the jurisdiction of foreign tribunals, nor can the latter tribunals issue writs which may be enforced in other states." 2 Freem. Judgm. (4th Ed.) § 575.

In Wood v. Wood, supra, Judge Pryor referred to the case of Bullock v. Bullock, 27 Atl. 435, 51 N. J. Eq. 444, where the chancellor refused to enforce the specific performance of a direction in a New York decree of divorce that the defendant should secure the alimony by the execution of a mortgage on his real estate in New Jersey. This decision has since been affirmed on appeal, although only by a closely-divided court. 52 N. J. Eq. 561, 30 Atl. 676. In the opinion of Garrison, J., in favor of affirmance, the following passage clearly defines what I understand to be the judgment to which alone the federal law gives conclusive effect:

"That only is 'judgment' that is pronounced between the parties to the action, upon the matters submitted to the court for decision. To judgments thus rendered the federal law accords in every state the same conclusive force possessed in the state where they are rendered. After judgment in a state court, all that follows, for the purpose of enabling the successful party to reap the benefits of the determination in his favor, is execution or in aid of execution. No interpretation has ever been placed upon the federal constitution giving con-

clusive effect, or, indeed, any effect at all, to the executions of the judgments rendered in sister states, or to any order merely in aid thereof."

In this view, proof here of the New Jersey judgment for alimony in the present case, while it established the plaintiff's right to recover the amount of alimony thereby adjudged to be due, did not confer upon her any right to enforce payment of it in this state by means of the equitable remedies of sequestration, injunction, etc., which the New Jersey judgment provided for; nor could she here invoke the statutory provisions of our Code in reference to the collection and enforcement of judgments awarding alimony, because, as has already been said, the jurisdiction of the New York courts to apply these Code remedies is limited to cases in which the judgment of divorce or separation is rendered here.

I do not mean to assert that cases might not arise in which equitable relief could be afforded to a plaintiff in an ancillary action, after an unsuccessful attempt to collect by execution a judgment based on a foreign decree for alimony. Possibilities of this kind are suggested by Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169. No such question, however, is involved in the present case. The views which have been expressed simply negative the power of the supreme court here to enforce the special-term judgment based upon the plaintiff's New Jersey decree, by sequestration proceedings and the other modes specially provided in the Code of Special Procedure for the collection of alimony.

The judgment appealed from should therefore be modified so as merely to adjudge that the plaintiff recover of the defendant the amount of the past-due alimony, together with the counsel fee awarded to her by the New Jersey decree. There is nothing in the point that the New Jersey judgment is not enforceable at all here, because, as the appellant contends, "our law could not award alimony to a woman divorced in 1893 from a husband then without means, nor could it allow a mistake in a judgment to be corrected after the lapse of two years from the entry of the judgment." The litigation concerning the question of alimony took place in New Jersey, and the procedure therein was subject to the regulations which prevail in that state. All concur.