HELEN K. PAGE & another *vs.* WALTER G. PAGE.

Suffolk.    March 27, 1905. — September 9, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Divorce,* Alimony. *Jurisdiction.    Constitutional Law.*

The jurisdiction of our courts to enforce the payment of alimony as such is derived from statutes which apply only to cases where the question of divorce or separation is heard in our own courts.

A decree of a sister State ordering future payments of alimony, which is subject to revision by the court which made it, is not such a final decree as is required by art. 4, § 1, of the Constitution of the United States to be given full faith and credit in every State.

HAMMOND, J. This is a petition in equity filed in the Superior Court to recover arrears of alimony claimed to be due under a decree of the Supreme Judicial Court of the State of Maine, by which the court decreed a divorce *a vinculo* in favor of the petitioner, Helen Kelso Page, against the respondent, her husband, awarded to her the custody of their minor child, and directed the respondent to pay six dollars per week as alimony, — " said payment to be made each four weeks."

The petition sets out the decree and alleges that the court had jurisdiction over the case and full authority to pass the decree; that the child is still a minor, and since the date of the decree always has been in the care and custody of the said Helen; that since the decree the respondent has paid only $25; and that at the time of filing this petition there was due from the respondent by the terms of the decree the sum of $479, which he, although frequently requested, has refused and neglected to pay. The prayers are first, that the court may ascertain and decree what sum is justly and equitably due from the respondent; second, that the court may issue execution therefor or order the respondent to pay such sum within a certain time to be fixed by the court; third, that there may be included in such execution or order such sums as may be found justly due for the support of the child during the time subsequent to this petition and while it is pending; fourth, that the respondent be ordered to furnish sufficient security for the payment of such sums as may from time to time become justly due under said decree; and fifth, for such other relief as to the court may seem meet and proper. To this petition the respondent demurred. The judge of the Superior Court overruled the demurrer, and, being of opinion that before further proceeding the matter ought to be determined by this court, reported for our determination the questions of law arising upon the petition and demurrer.

The language of the decree is somewhat peculiar. It directs that the sum of six dollars per week shall " be paid by the libellee to the attorney for the libellant for the support of said minor child, said payment to be made each four weeks and to be in lieu of alimony." We construe this decree to be in substance an order to the libellee to pay the libellant the sum named, to be used by her in the support of herself and the child; and assume

that the libellant could enforce against the libellee whatever duty was placed upon him by the decree. The provision that it should be paid to the attorney of the libellant rather than to her in person was doubtless inserted for the convenience of the parties. At any rate it does not affect the substance of the liability imposed upon the respondent. We shall therefore treat this case as an application to enforce the payment of arrears of alimony ordered by a competent court of a sister State.

It is to be noted that, as an application to pass upon a question of alimony as such, this petition cannot be maintained. Alimony is incidental to a suit for divorce or judicial separation, and neither at common law nor by the weight of authority in a court of equity, no suit for judicial separation then pending, could it be granted. Originally it was solely a question for the ecclesiastical courts. *Shannon* v. *Shannon*, 2 Gray, 285. Pom. Eq. Jur. § 1120, and cases there cited. *Lynde* v. *Lynde*, 9 Dick. 473, and cases there cited. In *Shannon* v. *Shannon* it was held that in this Commonwealth the authority to grant alimony is now derived wholly from the statutes. With the exception named in R. L. c. 152, § 26, which is not here material, the statutes apply only to cases where the question of divorce or separation is heard in our own courts. R. L. c. 152, §§ 25, 27–33. Upon this petition, therefore, we cannot make any inquiry as to the proper amount to be allowed as alimony, nor can the order of the Maine court as to alimony be enforced in any of the ways set forth in our statutes. The questions as to whether any alimony should be allowed, and if so how much, are not for our consideration, but they are exclusively for the Maine court. We can have no part in the matter until the question of amount has been there settled, and even then we cannot make use of the statute proceedings because they are not applicable. Whatever relief we can give must be founded upon general principles.

It is unnecessary at this late day to cite authorities in support of the general proposition that when a court of one State having jurisdiction over the cause and parties finally adjudicates that a certain sum of money shall be paid by one party to another such an adjudication, whether it be in the form of a judgment in an action at law, or of a decree in equity or a proceeding for divorce

or alimony, is entitled under the first section of the fourth article of the federal Constitution to full faith and credit in every other State. Such an adjudication is made a debt of record not examinable on its merits, not only in the State where rendered, but in every other State. When an action is brought in a sister State upon such a judgment or decree, the court in which the action is brought has no occasion to inquire into the merits of the case upon which the decree was rendered. The court which rendered the decree has settled that question. Whether the original decree was founded upon a common debt or a claim for alimony is entirely immaterial. In the sister State it is known as a decree for the payment of money, and is seen in no other light.

But in order that a decree shall have this force under the Constitution it is necessary that it shall be final; and the authorities have differed as to whether a decree for the future payment of alimony by instalments is a final decree. In many cases a decree for the future payment of alimony by instalments has been regarded as within the constitutional provision. In some of these cases the particular decree, although providing for future payment, was in such form as to be regarded not to be subject to further revision by the court which passed it and therefore final; (*Brisbane* v. *Dobson*, 50 Mo. App. 170;) in some the point that such a decree was not final has not been taken by the defence; (*Harrison* v. *Harrison*, 20 Ala. 629;) and in some it has been directly decided that such a decree was final and within the terms of the constitutional provision. *Arrington* v. *Arrington*, 127 N. C. 190, a majority decision.

But the question whether a decree for the future payment of alimony which is subject to the revision of the court is a final decree and comes within the protection of the constitutional provision seems to have been recently settled by the Supreme Court of the United States. *Lynde* v. *Lynde*, 181 U. S. 183. This case in its various stages is very instructive upon this whole question of the extent to and the manner in which a decree for alimony will be enforced in another State; and its importance justifies an extended notice of it.

In August, 1893, on libel by the wife, a divorce was decreed between the parties by the Court of Chancery of New Jersey.

The decree was silent as to alimony. In February, 1896, the libellant, alleging that this decree was incomplete through the neglect of her counsel, filed a petition in that court praying for an opening and amendment of the decree by allowing reasonable alimony. *Lynde* v. *Lynde*, 9 Dick. 473; 10 Dick. 591. Thereupon such proceedings were taken that in December, 1897, a final decree supplementary to the decree of divorce was passed, awarding the wife $7,840 back alimony and a counsel fee of $1,000, and future alimony at the rate of $80 a week, authorizing the execution therefor, declaring the sums awarded as alimony to be liens upon the defendant's real estate, requiring him to give security for the payment of such sums, and providing for sequestration and a receivership in case of the defendant's failure to make the prescribed payments or to furnish the prescribed security. See 41 App. Div. (N. Y.) 280, 281; *S. C.* 162 N. Y. 405, 406. Upon this decree the wife brought a suit in the Supreme Court of New York, which rendered judgment in her favor. It was held that she was "entitled to judgment against the defendant for the amount of alimony, counsel fee and costs due, or incurred, under the New Jersey decree; for the amount of alimony accrued since the decree; that he pay to her the sum of $80 a week from the date of the decision, as and for permanent alimony; that he give a bond in the sum of $100,000, to secure the payment of the several sums of money specified and that, upon his failure to comply with the provisions of the decision, a receiver might be appointed, ancillary to the receiver appointed by the Court of Chancery of New Jersey." See 162 N. Y. 409. From this judgment the defendant appealed to the appellate division of the Supreme Court. Upon this appeal two important questions were raised: First, whether the New Jersey court had jurisdiction to render the judgment for alimony against the defendant; Second, if so, had the Supreme Court of New York any authority to enforce the New York judgment based upon the New Jersey decree for alimony, except by execution as a simple money judgment? The court having decided the first question in the affirmative, proceeded to the consideration of the second question; and in an able opinion in which some of the leading authorities are critically examined comes to the conclusion that while the New

Jersey judgment established the plaintiff's right to recover the amount of alimony thereby adjudged to be due at the time of the rendition of the judgment, it did not confer upon her any right to enforce the payment of it in the State of New York by means of the equitable remedies of sequestration, injunction, etc., for which the New Jersey judgment provided. These were no part of the judgment, but were only measures in the nature of an execution to enforce it. The judgment below was modified so as merely to adjudge that the plaintiff recover of the defendant the amount of alimony due at the time of the New Jersey decree, being $7,840, with a counsel fee of $1,000 and costs. See 41 App. Div. (N. Y.) 288, 289. From this decree both parties appealed. Upon this appeal the judgment was affirmed. 162 N. Y. 405. In giving the opinion of the court, Gray, J. says: " The action was to recover upon a final decree of the court of another state, which, being rendered with jurisdiction over the person of the defendant, is to be deemed conclusive, in so far as it adjudged the defendant to be indebted to the plaintiff at the date of its rendition. . . . As a debt of record against the defendant the courts of this state should give it full credit and effect; but as to its other provisions for future alimony and for equitable remedies to enforce compliance, I do not think we should say that it falls within the rule of the Federal Constitution. I do not think that the courts of this state should give effect to the decree by enforcing any of the collateral remedies, which the prevailing party may be entitled to in New Jersey and which the subsequent order gave to her. So far as it made provision for the payment of alimony in the future, it remained subject to the discretion of the chancellor and lacked conclusiveness of character. . . . The provision of the Federal Constitution, which requires that full faith and credit shall be given to the judicial proceedings of another state, in my opinion, should be deemed to relate to judgments, or decrees, which not only are conclusive in the jurisdiction where rendered, but which are final in their nature. If they, once and for all, establish a debt, or other obligation, against a party, the record is available in other jurisdictions as a foundation for a judgment there " ; and the judgment of the appellate division which gave to the plaintiff only the amount due at the time the New Jersey decree was passed, with counsel fee and costs, was affirmed.

From this judgment each party sued out a writ of error to the Supreme Court of the United States. The writ of error of the husband was there dismissed upon the ground that since the New York court had ruled that the decree of the New Jersey court was binding upon him and had thereby decided in favor of the full faith and credit of the decree under the Constitution and laws of the United States, its judgment on that question could not be reviewed by the federal court on writ of error. As to the writ of error brought by the wife, the court by Gray, J. said: "The decree for the payment of $8,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision of the payment for alimony in the future was subject to the discretion of the Court of Chancery of New Jersey, which might at any time alter it, and was not a final judgment for a fixed sum. The provisions for bond, sequestration, receiver and injunction, being in the nature of execution, and not of judgment, could have no extraterritorial operation; but the action of the courts of New York in these respects depended on the local statutes and practice of the State, and involved no federal question." On the writ of error of the wife the judgment was affirmed. *Lynde* v. *Lynde*, 181 U. S. 183. The result of the suit brought in New York therefore was that so far as respected the alimony the wife got judgment for the amount found due by the New Jersey court at the time of its decree, but for nothing after that date.

This decision of the federal court is an authoritative declaration of the interpretation of the provision of the federal Constitution under consideration, and is binding upon this court. In order to bring herself under the protection of this provision the plaintiff therefore must show that the decree was final. The decree had reference simply to future payments, and generally such a decree in the form of this one is subject to modification by the court which passed it. There is no allegation in the bill upon that subject. It is true that there is an allegation that the decree "still stands unreversed and in full force," but that is not an allegation that it is final. It is not an allegation as to the nature of the decree, but simply that its nature has not been changed. As the question comes to us upon demurrer we have no information before us as to the law of Maine, but in view of

the general character of such decrees and the general rule that they are subject to the revision of the respective courts which pass them, we cannot upon demurrer to this bill assume that the decree is final. If the plaintiff contends that it is, there should be in the bill some such allegation as there was in *Brisbane* v. *Dobson*, namely, that there is no authority in the court to reverse or modify the decree. So far, therefore, as the plaintiff relies upon this constitutional provision, she has not stated a case. So far as independently of that provision she asks the assistance of this court as in a case of foreign judgment, she is met by the same difficulty. It does not appear that she has any positive or final decree for the payment of a sum certain or which can be made certain. The fair construction of the bill taken in connection with the nature of the decree is that she has no such final decree. For aught that appears the Maine court upon application might revise the decree and decline to issue any process for the collection of any sum whatever.

The demurrer, therefore, must be sustained. It is unnecessary to consider whether, if the decree be regarded as final, a bill in equity can be sustained. It would then be simply a decree for money, and notwithstanding some dicta in our own cases and some decisions elsewhere, an action at law would seem at least to be a plain, adequate and complete remedy. *Howard* v. *Howard*, 15 Mass. 196. See also cases hereinbefore cited.

Under the terms of the report the case is remanded to the Superior Court for the allowance of such amendments to the bill as it may see fit to grant, and for further proceedings not inconsistent with this opinion ; and it is

*So ordered.*

*O. O. Partridge*, for the plaintiffs.
*F. L. Young*, for the defendant.