(No. 30785.—

NELLIE CLUBB, Appellee, *vs.* HERBERT WILLIAM CLUBB, Appellant.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

ARTHUR ABRAHAM, of Chicago, for appellant.

FRED A. GARIEPY, and MARY BERKEMEIER QUINN, (OWEN RALL, and JOHN SPALDING, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

May 18, 1927, Nellie Clubb, appellee, commenced an action for divorce against her husband, the appellant, Herbert William Clubb, in the High Court of Justice, Probate, Divorce and Admiralty Division, (Divorce,) sitting at the Royal Courts of Justice Strand in the County of Middlesex, London, England. February 4, 1929, she was granted a decree absolute which dissolved the bonds of matrimony between them. February 11, 1929, an order was entered requiring appellant to pay her alimony at the rate of £8 per week, after deduction of income taxes, from February

4, 1929, during their joint lives and until the further order of court. June 4, 1930, through garnishment proceedings appellee received, as cash surrender value of a policy of insurance upon appellant's life, £357 which was applied upon the said alimony. No further sum has been received or credited thereon.

While the divorce proceeding was pending and before appellant had been decreed to pay alimony, he was sent by his employer from London, England, to Chicago, and from there to Australia, from which country he returned to Chicago in December, 1929, and has since resided there. April 9, 1943, appellee filed suit in chancery in the superior court of Cook County against appellant, based on the English decree, in the first count of which she prayed for judgment for the unpaid alimony with interest thereon at 5 per cent and for attorney's fees and costs. By her second count she asked for an accounting of all moneys due and owing for alimony plus interest, attorney's fees and costs. Each count contained a prayer for general relief. In that suit she procured a decree entering judgment April 22, 1946, against appellant in the sum of $44,764 representing back alimony due her with interest thereon and also judgment in the sum of $41.10 as costs of suit, both of which appellant was ordered to pay. Execution was issued April 30, 1946, and returned May 13, 1946, no property found and no part satisfied. This judgment not being paid, appellee filed her petition in the superior court October 2, 1947, for a rule upon appellant to show cause why he should not be held in contempt of court for failure to comply with the provisions of the decree.

In appellant's answer to the petition he stated that his failure to pay was not wilful but was due solely to the circumstance that he at no time since the entry of the decree had any estate or moneys with which to pay it and that he has no money, property or estate whatever other than wearing apparel and personal effects. After hearing

evidence the court dismissed the petition for want of equity. On appeal to the Appellate Court the order of the lower court was reversed and the cause remanded with directions to find defendant guilty of civil contempt of said court. We allowed an appeal from the Appellate Court and the case is before us for review.

It is contended by appellant that the English decree for the payment of money can be sued upon only as a debt and an ordinary judgment obtained as at law; that the law gives an adequate remedy and equity has no jurisdiction; that the superior court has no jurisdiction to enforce either the English decree or its decree based thereon except as ordinary judgments are enforced and that contempt is not proper under any rule of comity; that the full-faith-and-credit clause of section 1 of article IV of the United States constitution does not apply to a judgment or decree of a foreign country and that the evidence justified the dismissal of the petition to show cause, for want of equity.

On the other hand, appellee maintains that the decree in the superior court was for alimony and that the court had power under the rule of comity to enter its decree of April 22, 1946, and to hold appellant in contempt for failing to pay the judgment entered; that contempt for failure to pay is justified by section 42 of the Chancery Act, (Ill. Rev. Stat. 1947, chap. 22, par. 42;) that the power to hold appellant in contempt is also justified by the inherent power vested in a court of chancery to compel obedience to its decree; and that the evidence on the petition to show cause abundantly shows appellant to have been guilty of wilful and wanton refusal to comply with the superior court's ruling.

Section 1 of article IV of the constitution of the United States provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts,

Records and Proceedings shall be proved, and the Effect thereof." Most of the cases cited by both sides are based upon judicial proceedings of some other State of our Union and are controlled by the above constitutional provision. We must not, however, construe that provision as embracing public acts, records and judicial proceedings of other countries. Such broad construction could lead us into troublesome situations and would not be within the intent of the framers of the constitution. *Aetna Life Ins. Co.* v. *Tremblay*, 223 U. S. 185.

*Boissevain* v. *Boissevain*, 252 N. Y. 178, 169 N. E. 130, seems to be the only reported case where a judgment or decree has been entered in a State court based upon a decree of a foreign country for alimony. In that·case the wife obtained a divorce in Holland and alimony was awarded her. Thereafter she brought suit in New York upon the Dutch judgment and obtained a judgment for a sum representing the arrears of alimony. She asked judgment for the amount payable under the foreign decree from its date to the date of entry of judgment in the New York court, and also requested "equitable relief by way of a direction to defendant to make future payments in· accordance with that judgment, as well as its enforcement in the same manner as one rendered by the courts of this state." The Court of Appeals held that the Dutch judgment was entitled to recognition here but said that "the prayer for relief is in one instance too vague, and in the other instance too broad. * * * The second relief demanded is too broad, because the complaint seeks enforcement of the foreign judgment by a form of equitable relief which is inappropriate to the facts as pleaded. This is a type of foreign judgment for which no provision is made for enforcement in the same manner as a judgment for the payment of alimony rendered by courts of this state. * * * The complaint, therefore, fails to state a cause of action for equitable relief."

Sections 1171 and 1172 of the Civil Practice Act of New York controlled the remedies in cases of judgments obtained in other States for absolute divorce on the ground of adultery. The court in the *Boissevain case* held those remedies applicable only to such judgments as had been obtained in one of the States of the Union and not to include judgments which are truly foreign. This decision seems to be authority for recognition of the foreign judgment to the extent that a judgment for arrears in payment of alimony based thereon may be procured in a State court but that, in the absence of a specific statute for that purpose, the foreign judgment cannot be enforced as one for the payment of alimony rendered by courts of a State. Illinois has no statute providing for such enforcement. We do not believe the legislature had that matter in mind when section 42 of the Chancery Act was enacted.

In *Hilton* v. *Guyot,* 159 U. S. 113, 40 L. ed. 95, where the effect of a foreign judgment was considered, it was held that, in the absence of statute or treaty, the comity of this country does not require that judgments of a foreign country be recognized as conclusive in this country, where such foreign country does not give like effect to our own judgments. The opinion of Justice Gray in that case, quoting from Mr. Wheaton, at page 109, says in part: "All the effect which foreign laws can have in the territory of a state depends absolutely on the express or tacit consent of that state. * * * The express consent of a state, to the application of foreign laws within its territory, is given by Acts passed by its legislative authority, or by treaties concluded with other states. Its tacit consent is manifested by the decisions of its judicial and administrative authorities, as well as by the writings of its publicists."

The same case cites an old English case, *Roach* v. *Garvin,* 1 Ves. Sr. 157, 159, decided by Lord Hardwicke. In that case the English court was requested to put in execution a chancery decree entered in France, where an infant

ward of a court of chancery had been married in France by her guardian to his son before a French court, and the son petitioned for a decree for cohabitation with his wife and to have some money out of the bank. Lord Hardwicke in passing upon the case, after observing upon the competency of the French tribunal and pointing out that the restitution of conjugal rights was within the jurisdiction of the ecclesiastical court and not of the court of chancery, added: "Much less will I order any money out of the bank to be given him." The court, in *Hilton* v. *Guyot,* at page 112, referring to Lord Hardwicke's decision, says: "He thus clearly recognized the difference between admitting the effect of a foreign judgment as adjudicating the status of persons, and executing a foreign judgment by enforcing a claim for money."

In practically every case cited by appellee where a judgment or decree of a sister State has been enforced, the local court has first established the judgment as its judgment or decree. In the present case appellee requested only a judgment based upon arrears in alimony payments but did not pray that the English judgment be established here as a foreign judgment to be enforced in equity. The judgment which appellee obtained could as well have been entered on the law side of the docket, and in our opinion it has no greater force or effect than a judgment at law.

In *Creager* v. *Superior Court,* 126 Cal. App. 280, 14 Pac. 2d 552, plaintiff recovered in California upon a Nevada judgment awarding alimony. Contempt proceedings were commenced against the husband for failure to pay. He sought a writ of prohibition, which was denied. In deciding the case the court said: "Petitioner's contention would have some force if the plaintiff had merely used the Nevada decree as a basis for obtaining an ordinary money judgment for accrued installments of alimony in an action at law against petitioner. * * * But here the plaintiff did

not seek a mere money judgment, but sought and obtained a judgment whereby the Nevada decree was 'established herein as a foreign judgment'."

It will be noted that the complaint in *Rule* v. *Rule,* 313 Ill. App. 108, upon which appellee relies, contained a prayer that the decree of the Nevada court for alimony be established here as a foreign judgment and be enforced by appropriate equitable remedies, as is usual in such cases. The court in that case, after citing a number of cases from other States, says: "These courts have announced and adhere to the rule that a divorce decree in one State can be established as a foreign decree and enforced in their local courts."

Likewise, in *Fanchier* v. *Gammill,* 148 Miss. 723, where suit was brought in Mississippi upon a Nevada decree for alimony, the prayer was that the courts of Mississippi would establish and enforce the Nevada divorce decree for alimony by and through the court in equity for that State. That court interpreted the full-faith-and-credit clause of the Federal constitution to mean that the judgment for alimony of a foreign State should be established and enforced by the equity courts of the State.

In *Johnson* v. *Johnson,* 194 S. C. 115, cited by appellee, the court held that a decree for alimony granted by a Florida court may be established in South Carolina as a local judgment and enforced by equitable remedies. In *Cousineau* v. *Cousineau,* 155 Ore. 184, cited by appellee, the plaintiff prayed for, and was allowed to establish a California decree providing for alimony as an Oregon decree. There are cases of other States to the same effect, where the prayer was for the establishment of a foreign decree as one of the State in which relief was sought.

We refer to the above cases concerning establishment of a decree of a sister State in the local court merely to show that the relief requested in them was different from

that prayed for by appellee, but we have not cited them as showing authority for the establishment in our local courts of a judgment or decree of a foreign country.

A number of States have refused to take jurisdiction in chancery for the recovery of arrears in alimony claimed to be due under a decree of divorce entered even in another State of the Union. Such holding in effect was made in the District of Columbia in *Grant* v. *Grant*, 64 App. D.C. 146, 75 Fed. 2d 665, where the court held that a divorced wife could not maintain a suit in equity for enforcement of alimony provisions of a foreign divorce decree, since she had an adequate remedy at law by action in debt on the foreign decree.

In *Page* v. *Page*, 189 Mass. 85, 75 N.E. 92, the wife filed a petition in equity in the State of Massachusetts to recover arrears in alimony awarded her under a decree of divorce in the State of Maine. A demurrer was sustained to her petition and the relief denied. Equitable relief was also denied in a similar case, *Weidman* v. *Weidman*, 274 Mass. 118, and in *Kossower* v. *Kossower*, — N.J. —, 142 Atl. 30, it was held such a suit could not be maintained.

In *Lynde* v. *Lynde*, 41 App. Div. 280, 58 N.Y.S. 567, affirmed 162 N.Y. 405, and also affirmed in 181 U.S. 183, an attempt was made in New York to enforce a New Jersey decree for alimony. The trial court entered a judgment that the New Jersey decree for alimony be enforced "with like force and effect as if the same were a judgment of this court." The Appellate Division reversed the trial court, holding that New York had no jurisdiction over the subject of divorce except as derived by it from statute. It said in part: "That decree is merely evidence, upon which the plaintiff obtains here, not a judgment of divorce and alimony, but a judgment authorizing the collection of a certain sum. Hence, our courts may not afford the remedies which the code of civil procedure authorizes here upon

a judgment for alimony but may only enforce the judgment as one for money."

A recent Georgia case, *Lawrence* v. *Lawrence*, 196 Ga. 204, sustained a judgment on a decree of a foreign State for alimony as to the payments due at the time of judgment. It held, however, "But the fact that such a decree of another State was for alimony will not make the Georgia suit on such decree an alimony case, since it 'is simply an action on a debt of record'," and cited *McLendon* v. *McLendon*, 192 Ga. 70.

A Virginia decree was denied enforcement in an equity court of the District of Columbia. (*Worsely* v. *Worsely*, 64 App. D.C. 202, 76 Fed. 2d 815.) There are like decisions from other States but we shall not extend this opinion further by citing or quoting from them.

The Appellate Court based its decision in the present case under the rule of comity and upon section 42 of the Chancery Act. That section of the statute in our opinion is not authority for enforcement of a decree based upon a judgment of a foreign country. Sections 1171 and 1172 of the Civil Practice Act of New York provided for the enforcement of judgments of other States but were held to be applicable only to judgments of the States of the Union and not to judgments which are truly foreign. Had our legislature intended to provide for the enforcement of judgments or decrees of a foreign country it would no doubt have said so in specific language or language which would clearly express such intent.

The rule of comity between nations would justify our recognition of a decree of a foreign country, but we do not believe comity would require us to enforce a foreign decree for alimony where no law exists here granting power to our chancery courts for that purpose. Comity, in a legal sense, is neither matter of absolute obligation on the one hand nor of mere courtesy and good will on the other,

but it is a recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws. *Hilton* v. *Guyot*, 159 U.S. 113, 40 L. ed. 95.

There being no statute conferring specific authority on courts of equity to enforce decrees of a foreign country, we have considered whether or not under its general powers a court of equity might assume such jurisdiction. We have heretofore held that jurisdiction of courts of equity to determine divorce cases and all matters relating thereto is conferred only by statute, and that these courts may exercise their powers in such matters within the limits of the jurisdiction conferred by the statute and not otherwise, as the jurisdiction depends solely upon the grant of the statute and not upon general equity powers. *Arndt* v. *Arndt*, 399 Ill. 490; *Smith* v. *Smith*, 334 Ill. 370; *Smith* v. *Johnson*, 321 Ill. 134.

If a court of equity in our State has no general powers over divorce cases and all matters relating thereto, and citizens of our State cannot procure relief in such matters unless statutory authority so permits, it would not be just for us through claimed comity or alleged general powers to allow enforcement by our equity courts, through civil contempt, of a decree of a foreign country for the payment of alimony to one of its subjects. In our opinion comity does not require us to go that far.

The decree in the present case was entered on April 22, 1946, and the judgment was for a total of $44,764. Appellee does not argue that the appellant, since the date of that decree, has had sufficient money or means of paying it. She does say that he could have paid part of it. His testimony was to the effect that he could not have paid any part of it. The record is clear that he could not have paid it in full as he was ordered to do.

It is our opinion that the judgment of April 22, 1946, against appellant is a money judgment and not one for alimony and that failure or refusal to pay it does not render appellant guilty of civil contempt of court, as there is no law under which a decree of a foreign country for alimony can be enforced here. Other points are raised the decision of which will not be necessary in view of our holding.

We believe the superior court was right in dismissing, for want of equity, the petition to show cause, and that the Appellate Court erred in reversing and remanding the cause with directions to find appellant guilty of civil contempt. The judgment of the Appellate Court is therefore reversed and the order of the superior court is affirmed.

*Appellate Court reversed; superior court affirmed.*