CODO, BONDS, ZUMSTEIN & KONZELMAN, P.C., Plaintiff-Appellee, v. THE FEDERAL DEPOSIT INSURANCE CORPORATION, a receiver of The First Trust Bank of Lakefield, *et al.*, Defendants-Appellants.

Third District    No. 3—86—0036

Opinion filed October 24, 1986.

Cory D. Lund, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellant Federal Deposit Insurance Corporation.

Paul R. Shuldiner, of Herbert Beigel & Associates, Ltd., of Chicago, and William M. Walker, of Coryn, Walker & Meehan, of Rock Island, for other appellants.

Bruce L. Zumstein and Bruce M. Konzelman, both of Codo, Bonds, Zumstein & Konzelman, P.C., of Joliet, for appellee, *pro se.*

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Federal Deposit Insurance Corporation (FDIC), appeals from an order of the trial court granting a partial summary judgment, awarding fees, and enforcing an attorney's lien for the plaintiffs, Codo, Bonds, Zumstein & Konzelman, P.C. (the law firm). The FDIC argues that the trial court did not have jurisdiction to enforce the attorney's lien and that the court erred in granting the law firm's motion for summary judgment. We affirm.

In January of 1979 Alex J. Waitkoss (Waitkoss), an Illinois resident, executed two promissory notes for a total of $135,000, in favor of the Elgin National Bank (Elgin), located in Elgin, Illinois. Payment on the notes was due February 28, 1979. The First Trust Bank of Lakefield, Minnesota (the bank), through a participation agreement, advanced the loan proceeds to Waitkoss through Elgin. Waitkoss subsequently defaulted on the promissory notes.

In February of 1982, when it appeared that Elgin was not fulfilling its obligation to collect from Waitkoss, the bank retained the law firm to collect on the notes. Under a contingency agreement with the bank, the law firm was to receive one-third of all proceeds collected. The law firm commenced proceedings to collect from Waitkoss.

In March of 1983 the bank and Waitkoss reached a settlement on the outstanding debt, without the law firm's direct participation in the negotiations. That agreement was memorialized in a promissory note for $274,500. According to the affidavit of Douglas Kratz, then the president of the bank, prior to the settlement with Waitkoss he had a conversation with law firm attorney Bruce Konzelman. In that conversation he and Konzelman agreed that the law firm would reduce the contingency-fee agreement from one-third because the settlement would be reached without the law firm's assistance. However, according to the affidavit, the parties never reached a final agreement as to the reduced figure.

On July 19, 1983, the law firm served a notice of attorney's lien on Waitkoss, placing a claim on any money paid by him to the bank.

The law firm filed the present action against the bank and Waitkoss on April 19, 1985, in the circuit court of Will County. Waitkoss had been making regular payments to the bank on his settlement note. The law firm alleged that the bank failed to remit to the law firm funds owed on the contingency-fee contract for the collections from Waitkoss.

On May 30, 1985, the bank was declared insolvent. Under Minnesota law, the FDIC was appointed as a State receiver for the bank. On June 20, 1985, the FDIC was granted leave to intervene in the law firm's Will County suit.

On October 11, 1985, the law firm moved for partial summary judgment, both on the two counts of their complaint which asked for attorney fees and for enforcement of their attorney's lien, and on a previously filed petition to enforce their attorney's lien. The trial court granted the motion on November 15, 1985. The court found that the law firm had an enforceable attorney's lien, that there was no triable issue of fact as to the alleged reduction of the contingency-fee agreement, and that, as a matter of law, the law firm was entitled to the fees set forth in the agreement. The FDIC brought this appeal.

On appeal the FDIC raises essentially two issues: (1) whether the trial court had subject matter jurisdiction to hear the cause; and (2) whether the trial court erred in granting summary judgment as to the attorney's lien and the attorney fees.

As to its first issue, the FDIC contends that, because of public policy, full faith and credit, and comity, Illinois is required to recognize the

exclusive jurisdiction of the Minnesota courts given the Minnesota receivership. We disagree and will discuss in turn each of the above contentions, as well as conflict-of-law rules which we find to be dispositive of the issue.

■ Essentially, the issue before us is whether Minnesota law providing for exclusive jurisdiction in Minnesota should apply or whether Illinois may take jurisdiction under its own law for enforcement of an attorney's lien. Illinois courts have applied the rule that in conflict-of-law situations the law of the State with the most significant contacts should apply. (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593; *Ford v. Newman* (1978), 64 Ill. App. 3d 528, 381 N.E.2d 392.) This test provides that the parties' rights will be determined by the law of the State having the most significant relationship to the transaction and the parties. *Champagnie v. W. E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 395 N.E.2d 990.

■ Clearly, Illinois has the most significant contacts to this case. The original loan was negotiated and made in Illinois; both the law firm and Waitkoss are residents of Illinois; the contingency-fee contract was performed in Illinois; and the site of the debt is in Illinois. Minnesota's only relevant contacts to the litigation are that the receivership and the insolvent bank are located there, as is a portion of the debt already paid by Waitkoss to the bank. Therefore, under the most-significant-contacts test, Illinois law allowing Illinois jurisdiction for enforcement of the law firm's attorney's lien should apply.

We additionally examine each of the FDIC's contentions. The FDIC initially argues that the receivership laws of both Minnesota and Illinois reflect a strong public policy favoring the exclusive jurisdiction of the receivership court to adjudicate claims against the assets of a failed State bank. Minnesota law provides that if a receiver rejects a claim against the receivership, the action must be brought in the county where the bank had its principal place of business prior to liquidation. (Minn. Stat. sec. 49.24, par. 5 (1984).) Similarly, Illinois' bankruptcy law provides that the court in the county in which the bank is located shall be vested with jurisdiction to determine all matters pertaining to a receiver's control of an insolvent bank. Ill. Rev. Stat. 1985, ch. 17, par. 365.

■ ■ While Illinois bankruptcy laws reflect a public policy favoring the exclusive jurisdiction of the receivership court to adjudicate creditors' claims, Illinois has a stronger public policy favoring protection of the rights of domestic creditors. In *Boyles v. Royal Canner Manufacturing Co.* (1920), 216 Ill. App. 576, a local creditor was attempting to attach the Illinois assets of an Ohio receiver. The receiver

was appointed prior to the attachment, but the receiver had not yet taken possession of the assets. The *Boyles* court stated it was not the policy of Illinois to allow foreign receivers to remove assets located here, thereby requiring Illinois creditors to go to a foreign jurisdiction to assert their claims. We find *Boyles* to be applicable to the case at bar. With reference to its analysis, we find that the law firm should not be required to go to Minnesota to enforce its attorney's lien on assets located in Illinois, especially since the instant attorney's lien became effective two years before the bank went into receivership.

Next, the FDIC argues that Illinois must give full faith and credit to Minnesota receivership law. Article IV, section 1, of the United States Constitution provides that full faith and credit must be given in each State to the public acts of any other State. (U.S. Const., art. IV, sec. 1; 28 U.S.C.A. sec. 1738 (1966).) Both Minnesota and Illinois law prohibit the execution of a judgment by any creditor against an insolvent bank while the bank is in the receiver's possession. (Minn. Stat. sec. 49.04, par. 3 (1984); Ill. Rev. Stat. 1985, ch. 17, par. 366.) The FDIC interprets *Clark v. Williard* (1934), 292 U.S. 112, 78 L. Ed. 1160, 54 S. Ct. 615, to stand for the proposition that if a State's law, such as that of Illinois, requires that local creditors of an insolvent bank be treated equally, then full faith and credit requires that the State recognize such similar statutes of another State, such as Minnesota's, regarding insolvent banks. We find this interpretation of *Clark* to be incorrect.

■ In 1935 the Supreme Court clarified its position on foreign receivers in *Clark v. Williard* (1935), 294 U.S. 211, 79 L. Ed. 865, 55 S. Ct. 356 (*Clark II*). In *Clark II* the court held that a State is required to give full faith and credit only to the status of a foreign receiver as successor to the assets of an insolvent corporation. It further held that the State must apply its laws to the foreign receiver as it would to local creditors. In the instant case the record indicates that the trial court recognized that the FDIC was the owner of the insolvent bank's assets, and that it applied Illinois law fairly and without discrimination to the FDIC. In compliance with *Clark II*, the trial court did not deny full faith and credit to Minnesota law.

■ Finally, the FDIC contends that, as a matter of comity, Illinois should recognize and apply Minnesota receivership law. Comity is defined as neither a matter of absolute obligation nor as a matter of courtesy and good will, but as a recognition which one State allows within its territory to the legislative, executive or judicial acts of another State, having due regard for the interstate duty, convenience and rights of its own citizens who are under the protection of its own law.

(*Clubb v. Clubb* (1949), 402 Ill. 390, 84 N.E.2d 366.) Whether foreign laws will be enforced in the forum court under the doctrine of comity depends on whether any wrong will be done to a citizen of the forum State, whether the policies of the forum State will be impaired or contravened, or whether the court can do complete justice to those affected by the decree. (*Campbell v. Albers* (1942), 313 Ill. App. 152, 39 N.E.2d 672.) We do not believe that any principles of comity require Illinois to give precedence to either Minnesota law or Minnesota jurisdiction in this case.

In summation, we find that neither our own conflict-of-law rules, nor the theories set forth by the FDIC—public policy, full faith and credit, and comity—compel Illinois to relinquish jurisdiction of this case to Minnesota. Rather, we find that the circuit court of Will County, Illinois, had proper jurisdiction to adjudicate this cause under Illinois law.

■ In regard to its second issue, the FDIC argues that the trial court erred in granting summary judgment as to the attorney's lien and attorney fees. On appeal we will affirm the trial court's decision to grant summary judgment only if on the record there is no genuine issue as to any material fact and the movant was, indeed, entitled to judgment as a matter of law. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Thompson v. Platt* (1983), 116 Ill. App. 3d 662, 452 N.E.2d 733.

A careful review of the record reveals that the law firm clearly had a valid attorney's lien according to Illinois law. (Ill. Rev. Stat. 1985, ch. 13, par. 14.) The FDIC does not contest the validity of the lien itself but merely claims that the grant of summary judgment was improper because the trial court did not have jurisdiction in this matter.

■ As we have found that the trial court had proper jurisdiction, and as the validity of the attorney's lien is uncontested, we further find that the trial court appropriately entered summary judgment to enforce the lien. The trial court also properly granted summary judgment as to attorney fees. Apart from a single affidavit, there is no evidence that the law firm and the bank agreed to reduce the amount of the contingency-fee agreement. As we find no genuine issue of material fact, we affirm the trial court's decision to grant the law firm's motion for summary judgment.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.