YOLANDA ZALDUENDO, Petitioner-Appellee, v. CARLOS ZALDUENDO, Respondent-Appellant.

First District (5th Division)   Nos. 61874, 62243 cons.

Opinion filed January 13, 1977.—Rehearing denied March 7, 1977.

Raymond H. Groble, Jr., of Chicago, for appellant.

Thomas I. Matyas, of Panter, Nelson & Bernfield, of Chicago (Stephen J. Schlegel and Mel Sloan, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal, we are called upon to decide two issues—whether the circuit court has jurisdiction to award child support on a divorce decree entered in a foreign country where the decree made no provision for such support; and whether the trial court had authority to award attorney's fees for the defense of this appeal.

Carlos and Yolanda Zalduendo, natives of Cuba, were married in that country and divorced from each other on January 29, 1968, by a Havana court. That decree reads literally in the English language as follows:

"This certifies that in Divorce proceedings No. 736 filed in 1967, it

is the order of the court entered January 15, 1968 that the bonds of matrimony between Carlos Vincent Zalduendo and Yolanda Gonzalez Beltrones are terminated."

Carlos Zalduendo was plaintiff in that proceeding, and the decree made no disposition of property, contained no money award or judgment, and did not include any reference to children born of the marriage. Both parties subsequently made their way to the United States.

The Cuban decree was registered in the circuit court of Cook County on February 2, 1970, and on February 20, 1970, Yolanda filed a verified petition for child support which alleged the marriage and divorce of the parties in Cuba, the registration of the Cuban decree, and which asserted it to be a fully enforceable decree of the circuit court. The petition sought support for a child, Teresa Zalduendo, allegedly born of the marriage. Carlos filed no pleading in answer to this petition and, after a hearing on February 27, 1970, the trial court ordered defendant to pay $100 per month for the support of the child and to pay a fee of $100 to plaintiff's attorney. Carlos has complied fully with that order to the present time. (The transcript of the hearing and the order of the court recite that both parties were represented at the hearing.) No appeal was taken from the 1970 order.

On September 5, 1974, Yolanda filed a second petition to modify the order of support, alleging the increased age of the child, her medical expenses, and the increased earnings of Carlos as changes in circumstances justifying an increase in child support.

Carlos entered a "special and limited" appearance and moved to dismiss the proceedings for lack of subject matter jurisdiction. This motion was denied by the trial court, and the special appearance was quashed. Thereafter, in an answer to the petition, Carlos asserted that the registration of the Cuban decree was invalid and unenforceable in Illinois; that he was not the father of the child; that the court lacked both subject matter and personal jurisdiction; that the 1970 order was not a proper exercise of the trial court's power; and that the proceeding was not the enforcement of a "foreign judgment" within the meaning of the Uniform Foreign Money-Judgments Recognition Act. Ill. Rev. Stat. 1969, ch. 77, par. 121(2).

He then moved for an order requiring a blood test to determine the paternity of the minor child, under the provisions of the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1973, ch. 106¾, par. 1 *et seq.*). Yolanda answered the motion for a blood test by arguing that the paternity issue was *res judicata* by reason of the order entered in the 1970 proceedings requiring Carlos to pay $100 monthly for the support of the child. She also moved to strike the affirmative defenses in defendant's answer.

On January 14, 1975, the trial court after holding that it had subject matter and personal jurisdiction, denied the motion for blood tests and struck the affirmative defenses in Carlos' answer. On March 14, 1975, he was ordered to pay child support at the increased rate of $75 per week, retroactive to September 5, 1974, and to pay Yolanda's attorney's fees in the amount of $1,000. After he had filed a notice of appeal from those orders, she petitioned and an order was entered requiring him to pay her attorney $2,500 to defend the appeal. He appealed from that order, and we consolidated the appeals.

OPINION

Carlos has advanced a number of contentions, but the heart of his appeal lies in the jurisdictional issue—to which we first address ourselves. In that regard, it is his argument that the trial court lacked jurisdiction over the subject matter and, because the court had no statutory authority on which to base the various orders entered, they are null and void.

■■ It is, of course, axiomatic that orders entered by a court lacking subject matter jurisdiction are void. (*Cash v. Maloney* (1949), 402 Ill. 528, 84 N.E.2d 390.) Subject matter jurisdiction cannot be conferred on a court by consent of the parties. (*Werner v. Illinois Central R.R. Co.* (1942), 379 Ill. 559, 42 N.E.2d 82.) It is not waived by a failure to make timely objection (*Jackson v. Jackson* (1965), 55 Ill. App. 2d 77, 204 N.E.2d 153) and may be attacked at any time, either directly or collaterally (*Bratkovich v. Bratkovich* (1962), 34 Ill. App. 2d 122, 180 N.E.2d 716). If the trial court did not possess such jurisdiction, the orders appealed from would have to be reversed.

On the jurisdictional issue, he initially contends that the registration of the Cuban decree of divorce in 1970 was a nullity. Although not directly disputing this, Yolanda argues that registration was not necessary and, in view thereof, that any error assigned to the purported registration is meaningless. In *Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 234 N.E.2d 805, plaintiff sought to enforce certain provisions of an Israeli divorce decree which had not been registered. The argument made was that the failure to register rendered the decree unenforceable. The court, however, noted that the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1965, ch. 77, par. 88(a)) required only judgments or decrees of the United States or of any State or territory to be registered. Section 1 of the Act reads in relevant part: .

"Definitions.

As used in Act

a) 'Foreign judgment' means any judgment, decree, or order of a court of the United States or of any State or Territory which is entitled to full faith and credit in this state.

b) 'Register' means to docket and record a foreign judgment in a court of this state."

In *Hager v. Hager* (1971), 1 Ill. App. 3d 1047, 1052, 274 N.E.2d 157, 160, it was said that "* * * a judgment of a foreign country cannot be registered under the Uniform Enforcement of Foreign Judgments Act." Thus, although the propriety of the registration of the Cuban decree has no direct bearing on the result in this case, it does follow that the Uniform Enforcement of Foreign Judgments Act cannot provide a basis for jurisdiction to award child support in this case.

Similarly, the Uniform Foreign Money-Judgments Recognition Act (Ill. Rev. Stat. 1969, ch. 77, par. 121-29) also provides no basis for jurisdiction in this case. Section 1 of that Act defines "foreign judgment" as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial matters." Yolanda argues that the Cuban decree did not grant or deny recovery of money nor did it include a judgment for support. Therefore, she says that it falls within the provisions of section 7 of that Act, which states, "This Act does not prevent the recognition of a foreign judgment in situations not covered by this Act." (Ill. Rev. Stat. 1969, ch. 77, par. 127.) In the light thereof, she suggests that the Act does not prevent the enforcement of the decree, and that principles of comity would allow a court to enforce it.

■■ We agree with her that the Uniform Foreign Money-Judgments Recognition Act does not preclude a court of this State from *recognizing* a decree of divorce rendered by a foreign country; however, we believe she has confused the distinction between *recognizing* the foreign decree, as a matter of comity, insofar as it affected the *status* of the parties, and *enforcing* the terms of a foreign decree providing for alimony and child support. It is clear that provisions in a foreign decree regarding child support or alimony are unenforceable in Illinois. (*Nardi v. Segal; Hager v. Hager.*) The Act cannot, therefore, serve as a basis for allowing a court in this State to add provisions to a foreign decree which would have been unenforceable had they been placed in the original decree and, as we have noted above, the court could not make the decree its own through the registration process.

■■ Further, we reject her argument that section 7 of the Act allows the decree to be enforced under principles of comity. Our supreme court, in *Clubb v. Clubb* (1949), 402 Ill. 390, 84 N.E.2d 366, drew the same distinction regarding comity that we have drawn in regard to the Uniform Foreign Money-Judgments Recognition Act:

"The rule of comity between nations would justify our *recognition* of a decree of a foreign country, but we do not believe comity would require us to *enforce* a foreign decree for alimony

where no law exists here granting power to our chancery courts for that purpose." (402 Ill. 390, 399, 84 N.E.2d 366, 371.) (Emphasis added.)

Thus, if a court of this State may only recognize a foreign decree, and not enforce its provisions, there must be some other jurisdictional basis to sustain an award of child support.

■■ In this regard, Yolanda also urges that such jurisdiction can be found in the provisions of section 18 of the Divorce Act. (Ill. Rev. Stat. 1969, ch. 40, par. 19.) This view is mistaken. That section provides for the modification of child support orders after the original decree is entered. The court is also empowered to award child support at the time of the original decree. However, by the plain language of section 18, the power to award alimony or child support is conferred only "[w]hen a divorce is decreed * * *." (*Thomas v. Thomas* (1911), 250 Ill. 354, 95 N.E. 345.) We conclude therefrom that child support and alimony may be awarded under the provisions of the Divorce Act only where they are incident to an action for divorce or separate maintenance; or, in conjunction with the Uniform Act discussed above, where the decree of a sister State has been registered with and becomes an enforceable decree of the court. Neither situation exists here, where the decree was entered in a foreign country.

■■ In the light thereof, we see no subject matter jurisdiction by grant of statute in the instant case. However, we believe it exists in the common law under the plenary jurisdiction of courts of equity over the persons and estates of minors and under the provisions of article II, section 19 of the Illinois Constitution of 1870, in effect at the commencement of the original action in 1970.

As early as *Cowles v. Cowles* (1846), 8 Ill. (3 Gilm.) 435, 436-37, the supreme court upheld a custody decree, not on the basis of jurisdiction conferred by the Divorce Act, but under "[t]he power of a court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction, * * *."

The principle of *Cowles* was reaffirmed by the supreme court in *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 291, 215 N.E.2d 806, 809-10, where jurisdiction rested "* * * on the long-standing power of courts of equity to resolve child custody disputes."

This power of the equity courts is equally well established in child support matters. In *Parker v. Parker* (1948), 335 Ill. App. 293, 81 N.E.2d 745, the trial court dismissed for want of jurisdiction a petition seeking to require defendant to contribute to the support of his infant daughter. Although the parties had been divorced, no support order was entered because defendant was outside the jurisdiction of the court and did not appear after service by publication. Defendant, in *Parker*, contended that

no provision in the Divorce Act gave jurisdiction in such a situation and that there was no other basis therefor. He argued that the proceeding for support presented in reality only the interest of the mother, and not that of the child.

The *Parker* court held that the substance of the action must be considered, irrespective of pleading formalities, and it noted that the substance of the complaint involved the right of the minor child to support from her father rather than any interest or rights of the divorced parents. It then stated that the divorce did not abrogate the moral and legal responsibility of defendant to support his minor child and relied upon the language of *Kelley v. Kelley* (1925), 317 Ill. 104, 110, 147 N.E. 659, 661-62, where the supreme court stated:

> "The obligation of the father to support his children begins when the child is born and continues during the minority of the child. This obligation of the father to support his minor child is not affected by the decree granting a divorce * * *. His children are of his blood. It is not their fault that their parents have been divorced. It is their right to be given care by those who brought them into the world until they are old enough to take care of themselves."

The *Parker* court then said, at pages 300-01:

> "Under the Illinois constitution (art. II, §19) which provides that every person shall find a remedy in the law for the injuries or wrongs to his person, property or reputation, of which he is aggrieved, the Illinois court has recognized and protected the rights of minor children to support and family life against interference from third persons. [Citation.] If this right can be enforced against third persons, it should obviously be enforced against the derelict parent, who * * * is violating his obligations to his child.
>
> "Moreover, the cases are replete with declarations of the law that courts of equity have plenary jurisdiction over the persons and estates of infants, and that in cases where the rights of minors are concerned, they are the wards of the court, which will protect their interests. [Citations.] The petition herein presents the minor's right to support from her father, which right is independent of the obligations obtaining between her parents, and is, therefore, within the special province of the court of equity with its tradition of protecting the interests and estates of minors." 335 Ill. App. 293, 300-301, 81 N.E.2d 745, 748.

It is in this light that we have examined the petitions in the record here, and we conclude that they state a good cause of action for child support. Even without reference to the allegation that the Cuban decree is fully

enforceable in Cook County, which we have held not to be so for the reasons set forth above, the remaining allegations state a claim over which a court of equity may take jurisdiction. It follows that the trial court correctly determined that it had subject matter jurisdiction over this case. Parenthetically, we point out that although the concept of plenary equitable jurisdiction was not advanced by either party on this appeal, the supreme court has established the power of a reviewing court to decide a case under different theories than those advanced by a litigant. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831; Supreme Court Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366).) The issue we have thus decided is one of law involving no problems of proof. *Hux.*

■■ Having so determined that jurisdictional issue, the remaining contentions advanced by Carlos may be disposed of briefly. We have examined the record in the 1970 action and conclude that any question as to the acquisition of personal jurisdiction over Carlos in those proceedings has been waived. No objection was raised by him as to personal jurisdiction and no effort made to vacate the order entered therein. Further, no appeal was taken from it. Indeed, Carlos complied fully with its provisions at all times and did not raise the question until the 1974 proceedings.

■■ On the issue of paternity, we initially note that Carlos' briefs here contain no argument and cite no authorities on this question. At most, they present little more than bare statements of the issue. Such briefs fail to comply with the standards fixed by the rules of the supreme court and would justify precluding our consideration of that issue. See *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied*, 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232, *rehearing denied*, 400 U.S. 1025, 27 L. Ed. 2d 637, 91 S. Ct. 579.

In any event, we believe that defendant is estopped from raising the issue of paternity at this time. The rule of estoppel by judgment provides that a final judgment on the merits rendered by a court of competent jurisdiction is a bar to any subsequent litigation between the parties where the same cause of action is involved. (*People v. Kidd* (1947), 398 Ill. 405, 75 N.E.2d 851.) The cause of action merges into the judgment and precludes the relitigation of not only the matters which were litigated but also of matters which should properly have been litigated in the original action. (*Prochotsky v. Union Central Life Insurance Co.* (1971), 2 Ill. App. 3d 354, 276 N.E.2d 388.) Where the subsequent litigation is based on a different cause of action, collateral estoppel precludes parties or their privities from relitigating facts which were specifically determined therein. *Hinkle v. Tri-State Transit, Inc.* (1974), 21 Ill. App. 3d 134, 315 N.E.2d 289.

■■ Here, the 1970 order required Carlos to pay $100 per month for

the support of the child. It was alleged in the petition that he was the father and, although he was represented by counsel at that proceeding, no denial of parenthood was made and no appeal was taken from that order. The instant action is for a modification of that 1970 support order. Thus, if we were to accept the argument that the same cause was involved in both proceedings, the doctrine of estoppel by judgment would apply, and if we were to consider the alternative contention—that different causes were involved—collateral estoppel would prevent Carlos from raising the issue of parenthood, a finding of which was inherent in the 1970 support order.

■■ Further, in addition to the fact that Carlos made no denial of parenthood in the 1970 proceeding, we note that subsequent to the order entered therein, he treated the child as his own, declared her as a dependent on his income tax return, and made all of his support payments required by that order. Thus, in view of the fact that the totality of the evidence strongly indicated parenthood, even assuming that estoppel did not apply, we see no prejudicial error in the denial by the trial court of the request for a blood test.

The final issue on this appeal is that of attorney's fees. The trial court awarded $1,000 to petitioner's attorney for services provided in the trial court and, in an order entered subsequent to the filing of the notice of appeal, awarded $2,500 for the defense of this appeal.

Carlos argues that the only authority granted to the trial court to award attorney's fees is conferred by section 15 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 16). Section 15 provides in pertinent part as follows:

> "In all cases of divorce the court * * * may require the husband to pay to the wife * * * such sum or sums of money as may enable her * * * to maintain * * * the suit; and in every suit for divorce the wife or the husband * * * shall be entitled to alimony * * *, provided that no order or decree for alimony shall be entered until the court has determined from evidence the condition in life of the parties and their circumstances. * * * In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce the payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper."

He asserts in his brief that section 15 provides for attorney's fees on appeal "* * * only in case of divorce or appeals from the trial court's granting or not granting a divorce" and thus, he argues that the instant case was not for divorce but was only a "bare bones" proceeding for child support for which no such fees are permitted by section 15. Yolanda does not contest this interpretation of section 15, but she says in effect that the court had the inherent right to grant such fees.

■■ ■ While it is the general rule that attorney's fees are not awarded in the absence of statutory authority, the rule is not inflexible—as may be seen from the recent expression of the supreme court in *Pechous v. Slawko* (1976), 64 Ill. 2d 576, 357 N.E.2d 1144, where the court noted a trend toward a more liberal allowance of fees. If we were to accept the argument of Carlos, the right of a child to support would indeed become a hollow one. The record shows here that Yolanda was receiving public assistance and was without means to pay for an attorney and thus unable to properly protect the rights of her child. The services to be provided by counsel on appeal would be for the child's benefit and support in the same way that the action itself was for the support and benefit of the child. Under such circumstances, we think that the trial court could award attorney's fees under the same plenary equitable powers authorizing it to make such orders as are necessary for the support of the child, and this should include fees for the defense of an appeal involving the rights of the child. In the instant case, however, the supplemental order awarding attorney's fees for the appeal was made after the jurisdiction of the appellate court had attached and, because there is no apparent statutory authority for the trial court to enter such an order after the notice of appeal had been filed, we believe that the supplemental order must be reversed and the cause remanded for a new hearing on a reasonable attorney's fee for the defense of this appeal. The remaining orders appealed from are affirmed.

Affirmed in part; reversed in part; and remanded with directions.

MEJDA and LORENZ, JJ., concur.