*In re* MARRIAGE OF JILL BROWN, f/k/a Jill Harms, Petitioner-Appellant, and THOMAS HARMS, Respondent-Appellee.

Fourth District   No. 4—91—0549

Opinion filed February 20, 1992.

Balbach & Fehr, P.C., of Urbana, for appellant.

Reino C. Lanto, Jr., of Wilson & Lanto, of Rantoul, for appellee.

JUSTICE LUND delivered the opinion of the court:
This is an appeal from an order of the circuit court of Champaign County entered April 25, 1991, dismissing the "Petition for Registration of Foreign Judgment and for Supplemental Relief" (registration petition) and from the June 25, 1991, order denying a motion for reconsideration. Jill Brown, f/k/a Jill Harms, is petitioner, and her ex-husband Thomas Harms is respondent.

Petitioner caused the registration petition to be filed on April 26, 1990. The registration petition stated the petitioner's residence was in Dale City, Virginia, and alleged respondent was living in Washington, D.C., with his legal residence shown as Urbana, Illinois.

The registration petition basically alleged the marriage of Thomas Harms and Jill Harms was dissolved by a German court on October 17, 1984, but that petitioner commenced a dissolution action in Champaign County on March 30, 1984, which was not pursued because of respondent's request for a continuance because of his then active military duty in Germany.

The registration petition also referred to a portion of the German court's order and the approved agreement of the parties which reserved the determination of military retirement benefits to an American court.

### Issue
The issue on appeal is whether the trial court erred in dismissing the registration petition because of lack of subject-matter jurisdiction.

### Procedural History
On March 30, 1984, in Champaign County case No. 84—C—290, Jill Harms filed a petition for dissolution of marriage. Thomas Harms was respondent. On May 7, 1984, a letter dated April 30, 1984, from Lieutenant Colonel Thomas E. Harms to the circuit clerk of Champaign County was filed in case No. 84—C—290. This letter provided as follows:

> "Having received only this day my wife's (Jill M. Harms) petition for the dissolution of our marriage, I am responding directly to the court.
>
> Request a stay on any proceedings on this matter until July 1984. As the petition points out, I am a Lieutenant Colonel in the United States Air Force nearing the end of a five year tour

of duty in Germany. I am returning to the United States on 30 June 84 and am required to report for duty at the Pentagon not later than 31 July 84. Therefore, it is possible for me to be present at most any time during the month of July. I will be staying with my parents, which is also my permanent home address:

Mr. & Mrs. W. E. Harms
2206 Vawter Street
Urbana, Illinois 61801

While I'm still in Germany, any correspondence can reach me at the following address:

Lt Col Thomas E. Harms
BOX 62
APO NY 09021

Again, request your favorable consideration for deferral of proceedings until I can be present to personally defend and represent myself."

The next, and last, entry on the docket in case No. 84—C—290 provided: "April 9, 1987 On Court's own motion, cause stricken for want of prosecution, unpaid costs remitted."

The marriage of petitioner and respondent was dissolved by a German court on October 17, 1984, at which time the parties agreed to child custody, child support, and property division. Both parties were living in Germany at this time. The German court order provided:

"III.

*Pension Equalizations*:

The parties have agreed that a pension equalization shall proceed between the parties by way of the law of obligations (contracts). A regulation under U.S. law that possibly put the wife into a better position is specifically reserved to the wife. This agreement is appropriate and reserves to the parties their rights for pension equalization, it therefore was agreed to by the Family Court."

The agreement part of the German proceedings provided:

"4. A claim for support of the wife who is gainfully employed does not exist at this time. The assertion of support rights in case of the wife's need remains reserved.

5. The parties are agreed that there is to be a pension equalization between them by way of the law of obligations (contract).

Possible further rights of the wife under U.S. law remain reserved."

The April 26, 1990, registration petition followed. On April 25, 1991, after various motions, memorandums, and arguments by both sides, the trial court entered a written order, which provided in part: "[I]t is hereby ordered, adjudged and decreed that the Petition for Registration of Foreign Judgment and for Supplemental Relief is dismissed with prejudice per CCP 2—619 [(Ill. Rev. Stat. 1989, ch. 110, par. 2—619)]." No reason for the ruling is given in the order.

The trial court, at the March 20, 1991, hearing on the motion to dismiss, expressed its concern with subject-matter jurisdiction, stating: "It's not apparent to me," and: "[I]f this were an Indiana divorce, why would I have subject matter jurisdiction to start dealing with issues other than children reserved in an Indiana divorce?" The court stated:

"MR. FEHR [Counsel for petitioner]: No. sir, it doesn't.

THE COURT: And I'm looking for some help of why it is that I'm urged to have subject matter jurisdiction to resolve this issue. It's not apparent to me.

MR. FEHR: Your Honor, all I can come up with is the fact that Colonel Harms is a resident and has been a resident all his life of Illinois.

THE COURT: I may have personal jurisdiction until the end of time. I'm talking about subject matter jurisdiction.

If this were an Indiana divorce, why would I have subject matter jurisdiction to start dealing with issues other than children reserved in an Indiana divorce?

MR. FEHR: I'm [*sic*] believe—I'm sorry, Your Honor. I believe you have subject matter jurisdiction by virtue of the fact you have personal jurisdiction over Colonel Harms. It's Colonel Harms' right to this pension that we're considering, and by virtue of the fact that he has chosen to subject himself to the jurisdiction in Illinois, and this, this is probably the only court in Illinois, Illinois court, it's probably the only court that has any ability to deal with these issues.

THE COURT: Certainly the German court does.

MR. FEHR: Except they chose not to do that.

It's my understanding they felt they did not have jurisdiction to consider U.S. military pension.

THE COURT: I don't see that set forth in here. I see it reserved, which we do all the time.

MR. FEHR: Uh-huh.

THE COURT: I'm not sure I want German courts deciding when I reserve allocation of, of pension rights pending some further action, I'm not sure I want a German court to just pick up and start deciding what I've reserved.

I'm, I'm, I personally am at a loss as to why I'm urged to have jurisdiction to deal with the subject matter of this dispute. That's what I'm looking for help with. If there is some theory upon which I'm urged to have that jurisdiction, I would like to have it succinctly articulated."

From the court's comments and the resulting order, it is apparent that the dismissal was based upon the conclusion that subject-matter jurisdiction did not exist.

### The Law

"Subject matter jurisdiction is conferred on courts by the Constitution or by legislative enactment. (*Knaus v. Chicago Title & Trust Co.* (1937), 365 Ill. 588, 592.) Article VI, section 9, of the 1970 Constitution provides: 'Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction ***. *Circuit Courts shall have such power to review administrative action as provided by law.*' (Emphasis added.) (Ill. Const. 1970, art. VI, sec. 9.) This court has held that when a court is in the exercise of special statutory jurisdiction, that jurisdiction is limited to the language of the act conferring it and the court has no powers from any other source. (*Central Illinois Public Service Co. v. Industrial Com.* (1920), 293 Ill. 62, 65-66.) In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court. See *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 6-7; *Avdich v. Kleinert* (1977), 69 Ill. 1, 6; *Fitzgerald v. Quinn* (1896), 165 Ill. 354, 360." *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 210, 486 N.E.2d 893, 895-96.

●1 A court's jurisdiction in a dissolution of marriage action is conferred only by statute, and it must act within the statutory grant and may not rely upon its general equity powers. *In re Marriage of Garrison* (1981), 99 Ill. App. 3d 717, 720-21, 425 N.E.2d 518, 521; *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60, 389 N.E.2d 1170, 1172-73.

Orders entered by a court lacking subject-matter jurisdiction are void, and subject-matter jurisdiction cannot be conferred by consent

of the parties. *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 853, 360 N.E.2d 386, 389; *Cash v. Maloney* (1949), 402 Ill. 528, 534, 84 N.E.2d 390, 393; *Werner v. Illinois Central R.R. Co.* (1942), 379 Ill. 559, 566, 42 N.E.2d 82, 85.

■ Judgments of foreign countries cannot be registered under the Uniform Enforcement of Foreign Judgments Act (UEFJA) (Ill. Rev. Stat. 1989, ch. 110, pars. 12—601 through 12—617). *In re Marriage of Agathos* (1990), 194 Ill. App. 3d 168, 170, 550 N.E.2d 1161, 1162; *Zalduendo*, 45 Ill. App. 3d at 853-54, 360 N.E.2d at 389-90.

In her appeal, petitioner argues that she has rights under the Uniform Services Former Spouses' Protection Act (Spouses Protection Act) (10 U.S.C. §1408(4)(B), at 397 (1988)), specifically paragraph 1408(4)(B), which, by an agreement approved by the German court, are reserved for determination by a court in the United States of America. She further contends that respondent's legal residence in Champaign County, Illinois, requires that the right be pursued in the State court of that county. The filing of the registration petition apparently is an attempt to invoke jurisdiction of the circuit court of Champaign County so that court will make what amounts to a marital property division determination.

■ Congress enacted the Spouses' Protection Act (Pub. L. No. 97—252, 96 Stat. 718, 730-38 (1982)) to permit courts to treat pay of military personnel in accordance with the law of the jurisdiction of the court. (See *In re Marriage of Dooley* (1985), 137 Ill. App. 3d 401, 404, 484 N.E.2d 894, 896.) Military pensions may be treated as marital property under Illinois law and are subject to the division provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503). (*In re Marriage of Korper* (1985), 131 Ill. App. 3d 753, 755-57, 475 N.E.2d 1333, 1335-36.) It necessarily follows that had the marriage of the Harmses been dissolved by the circuit court of Champaign County in case No. 84—C—290, the military pension would have been subject to possible division.

In this appeal, petitioner argues that she has personal jurisdiction over the respondent and has a right to an interest in his military pension under the provisions of Federal law, which interest should be determined by the Illinois courts. She appears to equate personal service with subject-matter jurisdiction.

Respondent, on the other hand, says no subject-matter jurisdiction exists and, in any case, petitioner is barred by the statute of limitations and the *res judicata* effect of the termination of Champaign County case No. 84—C—290.

■ We first address the issue of *res judicata*. Supreme Court Rule 273 provides:

> "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." 134 Ill. 2d R. 273.

Section 13—217 of the Code of Civil Procedure (Code) provides, in relevant part, if "the action is dismissed for want of prosecution *** plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater." (Ill. Rev. Stat. 1989, ch. 110, par. 13—217.) Illinois decisions have held this section is one which " 'otherwise specifies' " in terms of Rule 273. (*Olson v. Dwinn-Shaffer & Co.* (1983), 114 Ill. App. 3d 925, 927, 449 N.E.2d 882, 884.) *Olson* states:

> "Moreover, it is clear that a dismissal for want of prosecution in Illinois is considered not to be an adjudication on the merits, not to prejudice the case of the party against whom it is entered, and not to act as a bar to a subsequent suit on the same issues." (*Olson*, 114 Ill. App. 3d at 927, 449 N.E.2d at 884.)

(See also *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585; *Wold v. Bull Valley Management Co.* (1981), 97 Ill. App. 3d 516, 423 N.E.2d 201; *O'Reilly v. Gerber* (1981), 95 Ill. App. 3d 947, 420 N.E.2d 425.) Respondent does not have a defense of *res judicata*.

Respondent contends petitioner had a claim to the military pension at the time of the March 30, 1984, filing in Champaign County case No. 84—C—290, and at least by the October 1984 German judgment. No action to enforce the military pension interest was commenced between October 1984 and the April 26, 1990, filing of the registration petition, a period of over five years. Respondent suggests that section 13—205 of the Code is the applicable limitation. That section provides:

> "Five year limitation. Except as provided in Section 2—725 of the 'Uniform Commercial Code', approved July 31, 1961, as amended, and Section 11—13 of 'The Illinois Public Aid Code', approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within

5 years next after the cause of action accrued." Ill. Rev. Stat. 1989, ch. 110, par. 13—205.

Petitioner objects to the consideration of the limitation argument because the trial court did not rule on it. She further contends that the limitations should not start to run until the pension becomes payable. Of more significance is her suggestion that the agreement entered into by the parties of the German order was a written agreement—thus making section 13—206 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 13—206), the 10-year limitation provision, applicable. Because of our following decision finding that subject-matter jurisdiction did not exist, we decline further comment on respondent's limitation contention.

### Conclusion

Regardless of the apparent harshness of our decision, we conclude that subject-matter jurisdiction did not exist in the present circuit court proceedings. As we have stated, marriage dissolution jurisdiction is statutory, now based upon the Dissolution Act (Ill. Rev. Stat. 1989, ch. 40, pars. 101 through 802). Commencement of an action under the Dissolution Act requires the filing of a petition for dissolution of marriage or for a legal separation. (Ill. Rev. Stat. 1989, ch. 40, par. 403.) Inherent within this provision is the existence of a marriage.

■ The lack of jurisdiction to enforce a marriage dissolution decree of a foreign country does not prevent us from giving recognition to the dissolution. (See *Clubb v. Clubb* (1949), 402 Ill. 390, 399, 84 N.E.2d 366, 371; *Zalduendo*, 45 Ill. App. 3d at 854-55, 360 N.E.2d at 390.) Thus, the German court's termination of the marriage should be recognized by the Illinois courts. As no marriage now exists between the parties, any petition under section 403 of the Dissolution Act (Ill. Rev. Stat. 1989, ch. 40, par. 403) would necessarily contain a false allegation. Thus, we can find no statutory authority under the Dissolution Act which will allow petitioner to come within its coverage. Not being able to come within the Act deprives the trial court of the jurisdiction of subject matter normally provided by a filing under the Act.

We are concerned that this decision leads to an inequitable result. It is apparent that the litigants in the German court proceedings recognized that Jill Harms (n/k/a Jill Brown) might well be entitled, under the laws of the United States, to a part of Thomas Harms' military pension. It appears the result of our opinion may deprive her of that entitlement.

We doubt that State courts of this country which hear marriage dissolutions reserve the allocation of a military pension, or other mari-

tal property, for purposes of assigning that allocation responsibility to the courts of another State. Many States, including Illinois, have adopted acts similar to the Uniform Marriage and Divorce Act (9A U.L.A. 147 (1973)), which includes (as does our Act) the concept that one court consider all factors set forth in section 503 of the Dissolution Act, and then allocate all marital property. Piecemeal allocation by different courts would appear to interfere with the fair distribution of marital assets.

The present fact situation may be unique but, because of the ever-increasing multinational character of our world society, perhaps it is time to carefully consider a legislative scheme allowing for jurisdiction in cases similar to the one now before us. Because of the complexity of the problem, it may be that such legislation should be developed by those who prepare uniform law proposals.

Affirmed.

KNECHT and COOK, JJ., concur.