**Jill M. BROWN, Plaintiff,**

v.

**Thomas Eugene HARMS, Defendant.**

**Civ. A. No. 94–901–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 26, 1994.

---

Philip Schwartz, Schwartz, Ellis and Moore, Arlington, VA, for plaintiff.

William Edward Hassan, Duvall, Harrigan, Hale & Downey, Fairfax, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is an action for partition of a military officer's retirement pay. It is brought by the retired officer's spouse following the dissolution of the marriage by a German court. The question presented is whether the Uniformed Services Former Spouses Protection Act (the "Act")[1] creates federal subject matter jurisdiction. For the reasons that follow, the Court concludes that it does not.

### I.

Defendant, a career military officer, and Plaintiff married in 1967. By 1984, the marriage had deteriorated and the parties were living separately in Germany. On March 30, 1984, Plaintiff filed for divorce in the Circuit Court of Champaign County, Illinois, apparently because this venue was then Defendant's legal residence of record. A month later, Defendant, having received notice of the Illinois divorce action, wrote to the court requesting a stay of the proceedings until July 1984, by which time he would have returned to Illinois. This request was apparently granted; the Illinois action was thereafter dormant until April 1987, when the court *sua sponte,* dismissed the case for want of prosecution.

In October 1984, while plaintiff and defendant were living apart in Germany, a German court, at their instance, dissolved their marriage. In this connection, the parties reached agreement on issues of child support, custody and division of certain property, which agreement was embodied in the German court decree.[2] Deliberately omitted from the German court decree was any partition of defendant's military retirement pay. Instead, the decree explicitly contemplated that the parties would pursue this issue in another forum.[3] The reason for this deliber-

---

1. 10 U.S.C. § 1408 (1988).

2. The German decree, in pertinent part, states as follows:

   (c) The parties have agreed that a pension equalization shall proceed between the parties by way of the law of obligations (contracts). A regulation under U.S. law that possibly put the wife into a better position is specifically reserved to the wife. This agreement is appropriate and reserves to the parties their rights for pension equalization, it therefore agreed to by the Family court.

3. In this regard, the agreement noted that:
   (b) A claim for support of the wife who is gainfully employed does not exist at this time. The assertion of support rights in case of the wife's need remains reserved. The parties have agreed that there is to be a pension equalization between them by way of the law of obligations (contract). Possible rights of the wife under U.S. law remain reserved.

ate omission, it appears, is the German court's belief that it had no power to effect a binding partition of defendant's retirement income. The Act confers this power on "any court of competent jurisdiction of a foreign country with which the United States has an agreement requiring the United States to honor any court order of such country." 10 U.S.C. § 1408(a)(C) (1988). The United States has no such agreement with Germany.

Following the German divorce, approximately five and a half years passed without relevant activity in this matter. Then, in April 1990, Plaintiff filed a Petition for Registration of Foreign Judgement and for Supplemental Relief in the Circuit Court of Champaign County, Illinois. Through this petition, Plaintiff sought to register the German decree and to obtain an order partitioning Defendant's retirement pay. A year later, in April 1991, the court dismissed this petition with prejudice for lack of subject matter jurisdiction. On appeal, the Illinois intermediate appellate court affirmed the ruling, holding (i) that "[j]udgements of foreign countries cannot be registered [in Illinois] under the Uniform Enforcement of Foreign Judgments Act," which Illinois had adopted, and (ii) that the Act conferred no jurisdiction on Illinois courts over the subject matter of the petition. *In re Marriage of Jill Brown,* 225 Ill.App.3d 733, 737–38, 167 Ill.Dec. 379, 383–84, 587 N.E.2d 648, 652–53 (1992).[4] Plaintiff took no appeal from this ruling, apparently because she lacked the funds to do so.

Approximately two years later, Plaintiff filed this action for partition of Defendant's military pension. Conceding that no diversity of citizenship exists among the parties, Plaintiff contends that there is federal question jurisdiction, as this is an action "arising under" the laws of the United States, namely the Act. Defendant disagrees, arguing that

the Act creates neither jurisdiction nor a federal cause of action.

## II.

Analysis properly begins with the recognition that federal district courts are "courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." *Goldsmith v. Mayor & City Council of Baltimore,* 845 F.2d 61, 63 (4th Cir.1988) (quoting *Bowman v. White,* 388 F.2d 756 (4th Cir.1968)). Put another way, "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress." *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)). It follows, then, that when jurisdiction is challenged, the proponent of jurisdiction must be able to point to some federal statute that confers jurisdiction in the particular case. And, while Congressional grants of power to adjudicate claims can be express or implied, it is settled that "such grants are not to be lightly inferred." *Nieto v. Ecker,* 845 F.2d 868, 871 (9th Cir. 1988).

These principles, applied here, point convincingly to the conclusion that there is no federal jurisdiction, expressed or implied, to adjudicate Plaintiff's request to partition Defendant's military retirement pay. To begin with, an express grant of jurisdiction is nowhere to be found in the Act. Indeed, the Act does not purport to confer subject matter jurisdiction on any court. Instead, the Act merely allows a court of "competent jurisdiction" to treat military retirement pay as spousal or community property "in accordance with the law of the jurisdiction of that court." 10 U.S.C. of 1408(c)(1).[5] In other words, the Act does no more than make clear that courts of compe-

---

4. The Illinois appellate court also ruled that the 1987 dismissal of plaintiff's original divorce did not bar the court from considering the 1990 Petitions on *res judicata.* 225 Ill.App.3d at 737–38, 167 Ill.Dec. at 383–84, 587 N.E.2d at 652–53.

5. This provision states in full as follows:
   (1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after

June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.
The term "court" is defined by § 1408(a)(1)(A) of the Act as:
   (A) any court of competent jurisdiction of any State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Sa-

tent jurisdiction, namely courts that already have subject matter jurisdiction from some proper source extrinsic to the Act,[6] may treat a military pension as the property of the retiree or as the joint property of the retiree and the retiree's spouse, depending on the legal rules of the court's jurisdiction. Thus, the Act empowers, for example, Illinois state courts to reach and partition military retirement pay, provided the Illinois court has jurisdiction over the matter pursuant to pertinent Illinois jurisdictional statutes, and provided further that the substantive legal rules the Illinois court would apply[7] allow or require partition in the circumstances. In sum, the Act only allows courts to apply state divorce laws to military pensions. It does not purport to do more. Nowhere does it expressly or impliedly grant any court the power to adjudicate any cause, nor does it provide any substantive rule for the treatment of military pensions in divorce or domestic relations contexts.

This conclusion is firmly supported by the Act's history. In 1981, the Supreme Court held that the existing federal laws granted husbands and wives no right to their spouses' military pensions, and that state courts were precluded from applying their community property laws to such pensions. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). Congress, dissatisfied with this state of affairs, passed the Act, making unmistakably clear in the process that it intended the Act "to restore the law to what it was when the courts were permitted to apply state divorce laws to military retirement pay." S.Rep. 502, 97th Cong., 2d Sess. 5, *reprinted in* 1982 U.S.C.C.A.N. at 1599–1600. Congress' purpose in passing the Act was simply to allow courts to reach a military officer's retired pay, provided the court was already empowered by a state statute to adjudicate property division disputes between members of the military and their spouses or former spouses. Nothing in the Act's language or its legislative history suggests that congress, in passing the Act, intended to expand the jurisdiction of federal courts to hear divorce-related matters they were not previously competent to adjudicate.[8]

Pertinent authority is sparse. The parties cite only two decisions, neither of which is squarely on point. The first is a Ninth Circuit decision where, consistent with the result reached here, the panel noted, in *dicta* that the Act "does not create jurisdiction, but grants power to courts once they have juris-

---

moa, the Virgin Islands, the Northern Mariana Islands, and the Trust Territory of the Pacific Islands;

(B) any court of the United States (as defined in section 451 of title 28) having competent jurisdiction; and

(C) any court of competent jurisdiction of a foreign country with which the United States has an agreement requiring the United States to honor any court order of such country.

**6.** This construction of the phrase "court of competent jurisdiction" finds firm support in the Act's legislative history, which reflects that "[t]he purpose of [§ 1408(c)(1)] is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* [*v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)] decision with respect to treatment of non-disability military retired or retainer pay." S.Rep. No. 502, 97th Cong., 2d sess. 16, *reprinted in* 1982 U.S.S.C.A.N. at 1555, 1611. In other words, the Act was not intended to create any new jurisdiction; courts that had jurisdiction before the Act would be the courts with jurisdiction after the Act; the only difference would be that those courts would now be able to reach and partition military pensions in the event it was appropriate to do so under applicable state substantive law.

Equally firm support for this construction of the phrase can be found in authority construing the same phrase in other statutes. *See Fields v. Washington*, 173 F.2d 701, 702–3 (3d Cir.1949) (federal Housing and Rent Act of 1947, indicating that aggrieved tenants could sue in a "court of competent jurisdiction", furnished no subject matter jurisdiction to federal district court, which had to look for such jurisdiction in sources extrinsic to that statute); *McCrae v. Johnson*, 84 F.Supp. 220, 222 (D.Md.1949) (same); *see also DCA Food Industries, Inc. v. Hawthorn Mellody, Inc.*, 470 F.Supp. 574 (S.D.N.Y.1979) (New York statute referring to "court of competent jurisdiction" as conferring no subject matter jurisdiction on courts and federal court was required to look for such jurisdiction in 28 U.S.C. § 1332 (diversity) or the doctrine of pendent jurisdiction); *accord Reagan v. Farmer's Loan & Trust Co.*, 154 U.S. 362, 392, 14 S.Ct. 1047, 1052, 38 L.Ed. 1014 (1894).

**7.** It is conceivable that in some circumstances, conflict of laws rules would lead a state court to apply the community or spousal property law of some other jurisdiction.

**8.** *See* Arruebarrena, *Applying Louisiana's Community Property Principles to Pensions*, 22 Loyola L.Rev. 241, 276–86 (1987).

diction." *Steel v. United States*, 813 F.2d 1545, 1548 (1987).

The second is *Kirby v. Mellenger*, 830 F.2d 176 (11th Cir.1987), cited and heavily relied on by the plaintiff. There, the Eleventh Circuit, in circumstances quite different from those at bar, reversed a district court's dismissal of a suit to partition military pay. *Kirby* is inapposite here because it is a diversity case, not a federal question case, and because it involves the applicability of the "domestic relations exception" to diversity jurisdiction,[9] not the question whether the Act creates or expands federal court jurisdiction. Read carefully, therefore, *Kirby* offers no support for defendant's argument.[10]

■ Plaintiff next argues that even if the Act, by itself, does not expand or create jurisdiction, there is federal subject matter jurisdiction nonetheless because, pursuant to 28 U.S.C. § 1331, this is an action "arising under" federal law, namely the Act. Settled principles scuttle this argument. An action does not arise under federal law unless "a federal right, privilege, or immunity ... [is] an essential element of the plaintiff's cause of action." *McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 250 (4th Cir.1972), (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). And, it is not enough for federal matters to be introduced "only in anticipation of a defense." *Id.*

■ Here, no "federal right, privilege or immunity" is an essential element of Plaintiff's action for partition of Defendant's military retirement pay. Instead, her action is founded either on her alleged contract with

Defendant in connection with the German divorce or on the divorce and community property laws of an appropriate state. The Act, by itself, confers no rights or privileges on Plaintiff and is not an essential element of her action. At most, the Act would serve to defeat a *McCarty* defense to the effect that federal law precludes partition of a military pension. The fact is, Plaintiff's claim does not arise under federal law, but arises instead under state contract or domestic relations law, and the Act serves only to allow a court that otherwise has jurisdiction to partition Defendant's military pension "in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). In short, the Act is neither an essential element of Plaintiff's claim, nor is it the source of it.[11] Accordingly, where, as here, "there is no federal cause of action and the application of a federal statute is but an element of plaintiff's state cause of action, [federal courts] lack federal question jurisdiction." *Pineville Real Estate Operation Corp. v. Michael*, 32 F.3d 88 (4th Cir.1994) (citing *Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 198 (4th Cir. 1991)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1173, 117 L.Ed.2d 418 (1992). Plaintiff's claim, therefore, does not arise under federal law as required in 28 U.S.C. § 1331.

Because there is no federal subject matter jurisdiction in this case, dismissal is required pursuant to Rule 12(b)(1), Fed.R.Civ.P.

An appropriate order will issue.

---

9. *See generally* 13B C. Wright, A. Miller & C. Cooper, *Federal Practice & Procedure* § 3609 (2d ed. 1984).

10. Plaintiff also argues that *Kirby* is persuasive precedent for finding federal jurisdiction in this case because there, as here, it appears that the plaintiff had no alternative state forum. There, the Eleventh Circuit, in weighing the applicability of the domestic relations exception to diversity jurisdiction, found persuasive the apparent lack of an alternative state forum. *Kirby*, 830 F.2d at 178. The flaw in Plaintiff's argument is that the lack of an alternative state forum may be a pertinent factor to weigh in the domestic relations exception calculus, but it is decidedly not relevant in deciding whether there is federal

question jurisdiction over the subject matter of the complaint. Put another way, the absence of a state forum (and hence presumably the absence of a remedy) may well be lamentable, but it cannot *create* federal question jurisdiction. Beyond this, it is worth noting that is far from clear that Plaintiff here in fact has no alternative state forum.

11. Well established principles make clear that the Act provides no basis for a federally implied cause of action. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).